Goodkind v. Rogan.

MAX GOODKIND ET AL.

v.

WILLIAM ROGAN ET AL.

1. INSTRUCTIONS—CONFLICTING EVIDENCE.—Where the evidence as to the essential elements of plaintiff's cause of action is conflicting, instructions should be accurate, and should not assume facts as proved about which there is a contest. So, in an action for breach of warranty, the warranty being denied, an instruction is erroneous which assumes that the article in question was not as warranted.

2. DAMAGES—COST OF RE-SHIPMENT.—Where no disclosure was made by the purchaser to the vendor of any special purpose for which the purchase was made, the vendor being directed merely to ship the goods to Cincinnati for the purchaser, the cost of re-shipment to Chicago by reason of a failure to sell in the former place, on account of the alleged inferior quality of the goods, cannot be included as an element of damages in an action against the vendor for a breach of warranty. Such damages only are recoverable as may be considered as arising naturally in the usual course of business from a breach of the contract, or such as may be reasonably supposed the parties had in contemplation at the time of making the contract.

Appeal from the Superior Court of Cook county; the Hon. Sidney Smith, Judge, presiding. Opinion filed March 29, 1881.

This was an action by appellees, the Rogans and plaintiffs below, against the appellants, Goodkind and Oberndorf, the defendants below, to recover damages for breach of an alleged warranty, claimed by the plaintiffs to have been made by the defendants, upon the sale by the latter to the former May 8, 1880, at Chicago, of a quantity of grease, comprised in a lot of 80 tierces, said to contain 28,247 pounds, which plaintiffs bought and paid for at four cents a pound. The parties all resided and did business in Chicago—the plaintiffs as commission merchants, the defendants as manufacturers of grease. The goods were sold by sample, but the case was not tried, upon the theory that the bulk did not correspond with the sample. The theory of the plaintiffs was, that the grease was sold to them by the description of, and was represented by the defendants to be, "brown grease;" that it was not in fact "brown grease," but an inferior kind called "coon oil." The evidence given upon the trial fails to show that either kind of grease is adapted to any particular uses; nor was there any evidence tending to show that the plaintiffs purchased it for any particular use, or that anything whatever was said between the parties at the time of the sale, or any other time, as to the use or purpose for which the grease was bought.

The evidence simply tends to show that at the sale the plaintiffs directed defendants to ship the grease to Cincinnati to their, the plaintiffs' order, and for their account, the latter furnishing the car upon which the stuff was delivered at Chicago for shipment to Cincinnati. It was claimed by plaintiffs that when the grease arrived at Cincinnati, they ascertained that it was not, with the exception of one tierce, "brown grease," but was what they called "coon oil," which they claimed was an inferior kind, and worth less in the market. Plaintiffs pretend to have made some effort to dispose of it in Cincinnati, but just what they did in that behalf they do not disclose. They however soon after its arrival there, made a

re-sale of it to N. K. Fairbanks & Co., at Chicago, for three cents and one-eighth of a cent per pound, and ordered it re-shipped to Chicago, where it was delivered on such re-sale and paid for at said rate per pound. There was a close conflict of evidence upon the trial, both as to the fact of a warranty and breach.

The court below permitted the plaintiffs, against the objection of the defendants, to give evidence upon the question of damages as to the expenses incurred by them by way of freight, not only in the shipment of the grease from Chicago to Cincinnati, but those for cartage and freight in the re-shipment of it back to Chicago. And at the request of plaintiff's counsel, the court gave to the jury the following instruction : "5th. If you believe from the evidence that said defendants, at the time of selling the grease in controversy to plaintiffs, warranted the same to be "brown grease," and that plaintiffs bought the same to ship to Cincinnati for sale or use, and that defendants knew that the plaintiffs so bought it to ship to Cincinnati for sale or use and that it was so shipped to Cincinnati ; and that the plaintiffs did not know at the time it was so shipped that it was not as warranted ; and that said grease was not "brown grease," but was an inferior and poor quality of grease ; and by reason of its poor and inferior quality plaintiffs were unable to sell or use it in Cincinnati, and were obliged to ship it back to Chicago in order to dispose of it, then the jury will give the plaintiffs whatever sum or sums of money, if any, that you find from the evidence, they were obliged to pay for transportation of said grease to Cincinnati, and also from Cincinnati back to Chicago."

The jury returned a verdict for plaintiffs, assessing their damages at $196 ; and the court, overruling defendant's motion for a new trial, gave judgment on the verdict, and defendants appealed to this court.

Mr. B. M. Shaffner, for appellants; as to when there is a warranty and when it is merely an expression of opinion, cited, Benjamin on Sales, 567.

The fifth instruction was erroneous, because it assumed a

fact about which there was a dispute: Andreas v. Ketcham 77 Ill. 377; Skelley v. Boland, 78 Ill. 438.

Only such damages as the parties may be supposed to have in contemplation at the time of making the contract can be recovered: Griffin v. Colver, 16 N. Y. 493; Messmore v. The N. Y. Shot Co. 40 N. Y. 427; Thorne v. McVeagh, 75 Ill. 81.

Mr. M. J. DUNNE, for appellees; that the representations amounted to a warranty, cited Hawkins v. Berry, 5 Gilm. 36; 2 Kent's Com. 660; Chitty on Contracts, 135; Osgood v. Lewis, 2 Har. & G. 495.

When a manufacturer sells his own goods and nothing is said as to quality, there is an implied warranty that they are a fair, ordinary quality : Misner v. Granger, 4 Gilm. 69; Archdale v. Moore, 19 Ill. 565.

Appellants are liable for the cost of re-shipment of the goods: Thorne v. McVeagh, 75 Ill. 81; Crabtree v. Kile, 21 Ill. 180; Field on Damages, 256; Murray v. Meredith, 25 Ark. 164; Phelau v. Andrews, 52 Ill. 486; Marsh v. Weber, 16 Minn. 418; Knowles v. Munns, 14 Law Times, 592.

Where the court can see that no injustice has been done, it will not reverse the judgment for every error : Hall v. Sroufe, 52 Ill. 421; Phalman v. King, 49 Ill. 266; Rankin v. Taylor, 49 Ill. 45; Burling v. Ill. Cent. R. R. Co. 85 Ill. 18; Stobie v. Dills, 62 Ill. 432: Crowly v. Crowly, 80 Ill. 649; Hazen v. Pierson, 83 Ill. 241.

McALLISTER, P. J. The evidence in this case was closely conflicting as to essential elements of the plaintiff's cause of action. In such case even-handed justice requires that one party shall not obtain any undue advantage over the other by means of subtle and cunningly devised instructions. The fifth instruction asked by plaintiff's counsel and given by the court, seems to us to be precisely of that character. It ingeniously makes the court assume as facts that the grease in question was not as warranted; that it was not brown grease but was an inferior and poor quality of grease—vital facts in the case, and as to which there was a conflict of evidence.

The true character and purposes of instructions to the jury have been so often defined by the Supreme Court, that we shall not stop to repeat such definitions, or cite those cases wherein instructions which assume facts as to which there is a conflict of testimony, or no evidence in support of them, are held erroneous. That the one under consideration was erroneous in the respect indicated, there can be no doubt.

We are also inclined to the opinion that the same instruction was wrong, under the evidence in the case, in the direction to the jury that they might allow plaintiffs as damages the cost of transportation of the grease, not only from Chicago to Cincinnati, but also such cost from the latter place back to Chicago.

There is no evidence in the record tending to show that there were any special circumstances known to plaintiffs and communicated to the defendants at the time the contract was entered into, which would bring such injury and damages within the contemplation of the parties, especially as to the re-shipment of the grease from Cincinnati back to Chicago. Plaintiffs disclosed to the defendants nothing in reference to the purpose for which they purchased the grease. The substance of the transaction is, that plaintiffs purchased without any statement of special circumstances, and merely directed defendants to ship the grease to Cincinnati, to their order and for their account.

This being so, there was no evidence upon which to base any hypothesis in the instruction, if it contained one, that the plaintiffs purchased the grease for any particular purpose or use, or that defendants knew it. This case is wholly unlike that of Thorne et al. v. McVeagh et al. 75 Ill. 81. There, McVeagh & Co. had a contract with a party in Salt Lake City, to sell him 20,000 lbs. of hams, to be first class, and went to Thorne & Co. to buy of them in Chicago that quantity, to ship to Salt Lake City in performance of said contract. Thorne & Co. being informed of the purpose, sold to McVeagh & Co. the required quantity, warranting the hams to be first class, and shipped them to Salt Lake City without McVeagh & Co. having seen any of them. When the hams arrived at their desti-

nation, they were found to be " almost worthless, not properly cured, and in a bad condition when cured, and the sale thereof a first class fraud." So that there the article was purchased for a particular purpose, and that known to the seller when he warranted them such, in effect, as would answer that purpose; and, turning out to be almost worthless for any purpose, the court held that the cost of transportation from Chicago to Salt Lake City was a proper element of damage; but impliedly disapproved the idea that the cost of re-shipment back to Chicago could be properly allowed. In that case the court cited with approbation the cases of Griffin v. Colver, 16 N. Y. 489, and Messmore v. N. Y. Shot & Lead Co. 40 ib. 422.

It sometimes happens that losses may result from the breach of a contract which neither party contemplated, or could contemplate, at the time the contract was entered into, so that the courts have been required to lay down rules by which the limit of damages might be ascertained. The most difficult part of that undertaking is as respects consequential damages in cases of breach of contract. In Hadley v. Baxendale, 9 Exch. 341, such rules were formulated and explained thus: "Where two parties have made a contract which one of them has broken, the damages which the other party ought to receive in respect of such breach should be either such as may fairly and substantially be considered as arising naturally, i. e., according to the usual course of things from such breach of contract itself, or such as may reasonably be supposed to have been in the contemplation of both the parties at the time they made the contract, as the probable result of the breach of it. Now, if the special circumstances under which the contract was actually made were communicated by the plaintiff to the defendant, and thus known to both parties, the damages resulting from the breach of such a contract, which they would reasonably contemplate, would be the amount of injury which would ordinarily follow from a breach of contract under these special circumstances so known and communicated. But on the other hand, if those special circumstances were wholly unknown to the party breaking the contract, he, at the most, could only be supposed to have had in his contemplation the

amount of injury which would arise generally, and in the great multitude of cases, not affected by any special circumstances, for such a breach of contract."

The above New York cases adopt substantially the same rules. In the first of them, Griffin v. Colver, the rules are thus carefully stated by Selden, J.: "The party injured is entitled to recover all his damages, including gains prevented as well as losses sustained ; and this rule is subject to but two conditions : the damages must be such as may fairly be supposed to have entered into the contemplation of the parties when they made the contract—that is, they must be such as might naturally be expected to follow its violation ; and they must be certain, both in their nature and in respect to the cause from which they proceed."

The question as to the cost of transportation from Cincinnati back to Chicago being a proper element of damages, arises under the second branch of the rule in Hadley v. Baxendale, and the qualifications to the ordinary rule, as stated in Griffin v. Colver, *supra*. They are not such damages as might fairly be considered as arising naturally, that is, according to the usual course of things ; nor are they such as might, in the absence of special circumstances, be reasonably supposed to have been in the contemplation of the parties at the time of making the contract as the probable result of a breach of it ; nor are they certain in respect to the cause from which they proceeded. They were extraordinary, resulting from ulterior and unforeseen causes.

Although the rule in Hadley v. Baxendale has generally been accepted by the English courts as sound, yet it has not been universally regarded as true, that the mere communication of the special circumstances of the case by one party to the other, would impose on the latter an obligation to indemnify the former for all the damages that would ordinarily follow from a breach ; but to produce that result it would in many cases require proof of an assent by the latter to assume such a responsibility. Benj. on Sales, 729 *et seq.*

But here there was no communication by the buyers to the sellers of any special circumstances.

If the contract of sale had remained executory, then the alleged warranty might be regarded as a condition of the contract itself, so that plaintiffs might, on the arrival of the grease at Cincinnati, have rescinded and returned the article to the defendants at Chicago; then in the exercise of that right, the expenses of transportion both ways might have been properly chargeable as an element of damages. That however would have depended upon the principles applicable to the case of the termination of a contract, which is not this case. Here the contract was affirmed. The commodity sold was, at least constructively, delivered to the plaintiffs when put upon the cars furnished by them at Chicago.

The action is for the breach of an alleged warranty—a collateral undertaking, and, in this respect, was for ulterior consequences, involving extraordinary damages.

"To make a party to a contract responsible in case of its non-fulfillment by him for ulterior consequences, involving the payment of extraordinary damages, he should be distinctly and with reasonable preciseness, informed of the purpose for which the subject of the contract is intended by the other party. That purpose should be brought fairly within the contemplation of the one who is to be charged." Sedg. on Dam. 6th Ed. 83, note.

The rule of damages involved in the instruction in question was laid down and given to the jury substantially thus: If the jury find from the evidence that defendants warranted the article sold to be brown grease; that plaintiffs bought it to ship to Cincinnati, for sale or use, and the defendants knew at the time of the sale that it was so shipped; and if plaintiffs were ignorant as to its quality at the time, and it was not brown grease but grease of an inferior quality; that in consequence of its being so, plaintiffs were unable to sell or use the same in Cincinnati, and were obliged to and did ship it back to Chicago, then the jury should allow plaintiffs the cost of transportation, not only from Chicago to Cincinnati, but from the latter place back to Chicago.

Here the right to recover the cost of transportation is predicated upon the hypothesis of the grease being warranted,

having been bought to ship to Cincinnati for sale or use, and that known to the sellers; that it was not as warranted, but inferior in quality, which was unknown to plaintiffs at the time it was bought and shipped; and that then there was some such state of things in Cincinnati just at that time that plaintiffs could neither sell or use the grease there, and a necessity arose compelling them to ship it back to Chicago. It is not pretended the grease was worthless through any fault of defendants. And it is not true in fact that any communication was made by plaintiffs to defendants as to any purpose for which it was bought. Then how can it be said that those peculiar circumstances in Cincinnati, which would not permit plaintiffs to either sell or use this grease there, but obliged them to ship it to Chicago, are to be considered as having been within the contemplation of both parties at the time of entering into the contract? Upon the same hypothesis, if plaintiffs could not sell or use the article in either Cincinnati or Chicago, they could ship it to New York or Liverpool, and charge defendants the cost of transportation.

We feel entirely clear that, under the circumstances in evidence, defendants were not properly chargeable with the cost of transporation from Cincinnati to Chicago, and we are inclined to hold that the only proper measure of damages was the difference, if any, between the actual value of the article and the price paid for it (this being the Illinois rule) at Chicago, where delivery was made. Lattin v. Davis, Hill & Denio. Supp. 7. For error in giving said instruction, the judgment of the court below will be reversed.

